Samuels, J.
The record in this canse is encumbered with a large quantity of matter not pertinent to the subject really in controversy. Separating the portions of the record on which the cause must be decided from the mass in which they are involved, the case is as follows :
Henry Tiffany, the appellee, obtained a judgment in the Federal court for the western district of Virginia at September term 1839, against the appellant, William Carroll; and one Daniel Felton, at the September term 1843 of the Circuit Superior court of law and chancery for Preston county, obtained a decree *270 against the same “William Carroll for the payment of money. Felton forthwith sued out a ca. sa. on his decree, had Carroll arrested thereon, who relieved himself from custody by taking the benefit of the acts of assembly for the relief of insolvent debtors. Henry Tiffany then filed his original bill against William Carroll, Amos Carroll, John Scott and Benjamin Morton, charging them with confederating for the purpose of hindering, delaying and defrauding complainant and others, the creditors of William Carroll, in the collection of their debts; alleging that a certain tavern-house in the town of Kingwood in Preston county, nominally bought by the defendant Scott, was paid for by money furnished by defendant William Carroll, and that it was held in secret trust for him; that the money used in paying for the tavern-house was derived from a contract made by William Carroll with the County court of Barbour county for the erection of a cóurt-house for that county; and seeking to subject the tavern-house, or the money derived from the contract aforesaid, *to the satisfaction of complainant’s demand. The defendants, and especially the defendant Scott, were interrogated minutely in the bill in regard to this subject; in regard to all which they answered, explicitly denying the fraud imputed, and giving a version of the transaction which entirely exculpated the alleged confederates from all the charges made against them.
Regarding the original bill as filed to enforce the lien of the judgment and to remove impediments out of complainant’s way, the bill on its face presents a case of which the court might take cognizance. The objection made by the appellants here that the suit was prematurely brought, cannot therefore be sustained. •
After the original bill was filed, the complainant sued out a ca. sa. on his judgment at law, on which hi's debtor, William Carroll, was arrested and discharged *271 from custody, under the acts of assembly for the relief of insolvent debtors. Thereupon complainant filed a supplemental bill setting forth this additional fact, and asserting his claim to the money arising from the courthouse contract. This money was the object of complainant’s pursuit, either as money or as invested in the tavern-house aforesaid. The result of the controversy must depend upon the true construction of the contract for building the court-house. Wiliam Carroll, when wholly insolvent, entered into an inchoate contract with the County court for building the courthouse, and by the terms of the contract he was required to give security for the performance of the work. Whilst the subject was in suspense, awaiting Carroll’s compliance with the terms of the contract, before it should become binding on either party, Felton’s ca. $a. was issued, and Carroll was arrested and discharged as above stated. ’ In Carroll’s condition it was impossible for him to give the security, and thus make the contract binding. It was agreed, however, between William Carroll, Amos Carroll and the County court, that William Carroll should assign his inchoate contract to Amos Carroll, and that Amos should give the security and take the contract on himself. The securities who signed the bond were willing to become bound as such for Amos Carroll, but' were not willing to be bound for William Carroll. Although William Carroll also signed the bond, it is perfectly clear that the subject was thus fully understood. The fact of the assignment is entered upon the minutes of the proceedings had in the' County court. After the assignment to Amos Carroll, he sold the contract to Hall for a profit of 1000 dollars, which is the money in controversy here.
A correct analysis of this contract will show that in equity Amos Carroll should be regarded as the contractor j he was bound to indemnify William Carroll *272 for his undertaking; he stood in the relation of principal to the securities; he alone was looked to by the court and all others for performance of the work. Nor could the charge of fraud be predicated on the fact of the assignment to Amos Carroll. In William Carroll’s hands the contract was merely inchoate, and could be of no value whatever to his creditors. From his insolvency, he could not have given the security to make it binding. He had no assignable interest which could pass at the time of his discharge under Felton’s ca. sa. At the time of his discharge under Tiffany’s ca. sa. his interest had already been assigned in pursuance of the terms of the arrangement, by which alone he was able to make the contract at all.
On the whole, I am of opinion that neither complainant nor any other creditor of William Carroll was in any degree injured by the assignment to Amos Carroll; that whether the price for which Amos Carroll sold the contract to Hall be. represented by Hall’s bonds or by the tavern-house, it is beyond complainant’s reach. I am of opinion to reverse the decree with costs to appellants; dismiss the original and supplemental bills, and that the costs of the Circuit court be paid by the appellees.
The other judges concurred.,
Decree reversed.